UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| MOSHE BORUKH,<br><br>                    Plaintiff,<br><br>     vs.<br><br>EXPERIAN INFORMATION SOLUTIONS, INC., BMW FINANCIAL SERVICES NA, LLC,<br><br>                    Defendants. | Civil Case No.: 1:24-cv-06022<br><br>COMPLAINT FOR VIOLATIONS OF THE FAIR CREDIT REPORTING ACT<br><br><br><br>**JURY TRIAL DEMANDED** |

Plaintiff Moshe Borukh ("Plaintiff"), by and through the undersigned counsel, brings this action on an individual basis, against Experian Information Solutions, Inc. ("Experian") and BMW Financial Services NA, LLC, ("BMW") (together, "Defendants"), and states as follows:

## INTRODUCTION

1. The computerization of our society has resulted in a revolutionary increase in the accumulation and processing of data concerning individual American consumers. Data technology, whether it is used by businesses, banks, the Internal Revenue Service or other institutions, allows information concerning individual consumers to flow instantaneously to requesting parties. Such timely information is intended to lead to faster and better decision-making by its recipients and, in theory, all of society should ultimately benefit from the resulting convenience and efficiency.

2. However, unfortunately this information has also become readily available for, and subject to, mishandling and misuse. Individual consumers can and do sustain substantial damage, both economically and emotionally, whenever inaccurate or fraudulent information is

1

disseminated and/or obtained about them. In fact, Experian acknowledges this potential for misuse and resulting damage every time they sell their respective credit monitoring services to a consumer.

3. The ongoing technological advances in the area of data processing have resulted in a boon for the companies that accumulate and sell data concerning individuals' credit histories and other personal information. Such companies are commonly known as consumer reporting agencies ("CRAs").

4. These CRAs sell information to readily paying subscribers (*i.e.*, retailers, landlords, lenders, potential employers, and other similar interested parties), commonly called "consumer reports," concerning individuals who may be applying for retail credit, housing, employment, or a car or mortgage loan.

5. Since 1970, when Congress enacted the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* ("FCRA"), federal law has required CRAs to implement and utilize reasonable procedures "to assure maximum possible accuracy" of the personal, private, and financial information that they compile and sell about individual consumers.

6. One of the primary purposes in requiring CRAs to assure "maximum possible accuracy" of consumer information is to ensure the stability of our banking system. *See* See 15 U.S.C. § 1681(a)(1).

7. The preservation of one's good name and reputation is also at the heart of the FCRA's purposes. *See Bryant v. TRW, Inc.*, 689 F.2d 72, 79 (6th Cir. 1982) (quoting 116 Cong. Rec. 36570 (1970) (emphasis added).

8. The FCRA also requires CRAs to conduct a reasonable reinvestigation to determine whether information disputed by consumers is inaccurate and record the current status of the disputed information, or delete the disputed information, before the end of the 30-day period

beginning on the date on which the CRA receives the notice of dispute from the consumer. This mandate exists to ensure that consumer disputes are handled in a timely manner and that inaccurate information contained within a consumer's credit report is corrected and/or deleted so as to not prevent said consumer from benefiting from credit and obtaining new credit.

9. In light of these important findings and purposes, Congress specifically noted "a need to insure that [CRAs] exercise their grave responsibilities with fairness, impartiality, and respect for the consumer's right to privacy." *See* 15 U.S.C. § 1681(a)(4).

10. The FCRA also requires furnishers of information, a creditor or other third party that provides information about consumer to a CRA, upon notice, to conduct a reasonable reinvestigation of all disputes with regard to the completeness or accuracy of any information it provides to the CRAs regarding a consumer and modify, delete, or permanently block any items of information found to be inaccurate, incomplete, or unverifiable after said reinvestigation is completed.

11. Plaintiff's claims arise out of Defendant Experian's blatantly inaccurate credit reporting, wherein Experian reported to Plaintiff's potential creditors that Plaintiff had an outstanding lease after the lease was transferred to a different consumer.

12. Accordingly, Plaintiff brings claims against Defendant Experian for failing to follow reasonable procedures to assure the maximum possible accuracy of Plaintiff's credit reports, in violation of the FCRA, 15 U.S.C. § 1681e(b), and failing to conduct a reasonable reinvestigation to determine whether information Plaintiff disputed was inaccurate and record the current status of the disputed information, or delete the disputed information from Plaintiff's credit file, in violation of the FCRA, 15 U.S.C. § 1681i.

13. Plaintiff also brings a claim against Defendant BMW for failing to fully and properly reinvestigate Plaintiff's disputes and review all relevant information provided by Plaintiff and Defendant Experian, in violation of the FCRA, 15 U.S.C. § 1681s-2(b)(1).

14. As part of this action, Plaintiff seeks actual, statutory, and punitive damages, costs and attorneys' fees from Defendants for their willful and/or negligent violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.*, as described herein.

## PARTIES

15. Plaintiff is a natural person residing in Queens, New York, and is a "consumer" as that term is defined in 15 U.S.C. § 1681a(c).

16. Defendant Experian is a corporation with a principal place of business located at 475 Anton Boulevard, Costa Mesa, California 92626, and is authorized to do business in the State of New York, including within this District. Experian can be served through its registered agent C T Corporation System located at 330 North Brand Boulevard, Glendale, California 91203.

17. Experian is a "consumer reporting agency" as defined in 15 U.S.C. § 1681a(f). Experian is regularly engaged in the business of assembling, evaluating, and disseminating information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681a(d) to third parties.

18. Defendant BMW Financial Services NA, LLC ("BMW") is a loan servicing company with its headquarters in Woodcliff Lake, New Jersey and is authorized to do business in the State of New York, including within this District. BMW can be served through its registered agent C T Corporation System located at 28 Liberty St., New York, NY 10005.

19. BMW is a loan servicer and "furnisher" of consumer information, as defined in 15 U.S.C. § 1681s-2(b).

**JURISDICTION AND VENUE**

20. This Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681p, which allows claims under the FCRA to be brought in any appropriate court of competent jurisdiction.

21. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

**FACTS**

**Summary of the Fair Credit Reporting Act**

22. The FCRA governs the conduct of consumer reporting agencies in an effort to preserve the integrity of the consumer banking system and to protect the rights of consumers to fairness and accuracy in the reporting of their credit information.

23. The FCRA was designed to protect consumers from the harmful effects of inaccurate information reported in consumer reports (commonly referred to as "credit reports"). Thus, Congress enshrined the principles of "fair and accurate credit reporting" and the "need to ensure that consumer reporting agencies exercise their grave responsibilities with fairness" in the very first provision of the FCRA. *See* 15 U.S.C. § 1681(a).

24. Specifically, the statute was intended to ensure that "consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information. *See* 15 U.S.C. § 1681(b).

25. To that end, the FCRA imposes the following twin duties on consumer reporting agencies: (i) consumer reporting agencies must devise and implement reasonable procedures to

ensure the "maximum possible accuracy" of information contained in consumer reports (15 U.S.C. § 1681e(b)); and (ii) consumer reporting agencies must reinvestigate the facts and circumstances surrounding a consumer's dispute and timely correct any inaccuracies (15 U.S.C. § 1681i).

26. The FCRA provides consumers with a private right of action against consumer reporting agencies that willfully or negligently fail to comply with their statutory obligations under the FCRA.

## Overview of the Credit Reporting Industry

27. The United States Congress has found that the banking system is dependent upon fair and accurate credit reporting. Inaccurate consumer reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence, which is essential to the continual functioning of the banking system.

28. Defendant Experian sells millions of consumer reports (often called "credit reports" or "reports") per day, and also sells credit scores.

29. Pursuant to 15 U.S.C. § 1681e(b), consumer reporting agencies, like Defendant Experian, are required "to follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."

30. Pursuant to 15 U.S.C. §§ 1681b and 1681e(a), consumer reporting agencies, like Defendant Experian, must maintain reasonable procedures to assure that consumer reports are sold only for legitimate "permissible purposes."

31. Defendant Experian's consumer reports generally contain the following information:

    (a) <u>Header/Identifying Information</u>: this section generally includes the consumer's name, current and prior addresses, date of birth, and phone numbers;

6

(b) <u>Tradeline Information</u>: this section pertains to consumer credit history, and includes the type of credit account, credit limit or loan amount, account balance, payment history, and status;

(c) <u>Public Record Information</u>: this section typically includes public record information, such as bankruptcy filings; and,

(d) <u>Credit Inquiries</u>: this section lists every entity that has accessed the consumer's file through a "hard inquiry" (i.e., consumer-initiated activities, such as applications for credit cards, to rent an apartment, to open a deposit account, or for other services) or "soft inquiry" (i.e., user-initiated inquiries like prescreening).

32. Defendant Experian obtains consumer information from various sources. Some consumer information is sent directly to Defendant Experian by furnishers.

33. The majority of institutions that offer financial services (e.g., banks, creditors, and lenders) rely upon consumer reports from CRAs (like Defendant Experian) to make lending decisions.

34. Those institutions also use FICO Scores, and other proprietary third-party algorithms (or "scoring" models), including debt-to-income ratios, to interpret the information in a consumer's consumer report, which is based on the amount of reported debt, payment history, and date of delinquencies contained in Defendant Experian's consumer reports.

35. The information Defendant Experian includes in a consumer report contributes to a consumer's overall creditworthiness and determines their FICO Scores.

36. FICO Scores are calculated using information contained in Defendant Experian's consumer reports.

37. Defendant Experian knows that FICO and other third-party algorithms (as well as the algorithms owned by CRAs) use variables or "attributes" derived from a consumer's consumer report to calculate a "credit score," which is a direct reflection of a consumer's creditworthiness.

7

38. Defendant Experian knows that lenders also consider a consumer's debt-to-income ratio (DTI) before deciding to extend credit or approve financing terms.

39. DTI compares the total amount a consumer owes to the total amount a consumer earns.

40. The higher the amount of reported debt that a consumer has, or appears to have, or is rather *reported* to have, the less favorable the consumer's DTI will be, and the more difficult it will be for a consumer to obtain credit and favorable credit terms. Rather, if offered credit at all, consumers will be offered less credit and at higher interest rates.

41. Defendant Experian routinely reports inaccurate and materially misleading information about consumers like Plaintiff, without verifying or updating it as required by § 1681e(b) of the FCRA.

42. Defendant Experian fails to employ reasonable procedures to assure the maximum possible accuracy of the information that it reports about consumers, including but not limited to, account balances, account statuses, payment histories, and payment statuses.

43. Consumers have filed thousands of lawsuits and FTC and Consumer Financial Protection Bureau Complaints against Defendant Experian for its inaccurate credit reporting.

44. Thus, Defendant Experian is on continued notice of its inadequate reporting procedures. Specifically, Defendant Experian is on notice that its inadequate procedures regularly result in the reporting of inaccurate balances, account statuses, payment histories, and payment statuses.

45. Defendant Experian has received and documented many disputes from consumers complaining that Experian reported inaccurate information about them.

## How CRAs Process Consumer Disputes

46. The credit industry has constructed a method of numeric-alpha codes for considering consumer credit report disputes. *See* 15 U.S.C. § 1681i(a)(5)(D).

47. The credit bureaus, Equifax, Experian, Trans Union, and Innovis, have thus created the Online Solution for Complete and Accurate Reporting, or e-OSCAR, as the credit industries' standard of performance. e-OSCAR allows the credit bureaus to create and data furnishers to respond to disputes initiated by consumers by routing credit reporting agency-created prompts for automated consumer dispute verifications to the appropriate data furnishers. e-OSCAR utilizes a numeric-alpha language specific to the credit reporting industry.

48. That lexicon or unique language is commonly referred to in the credit reporting industry as "Metro 2 Format" or "Metro 2."

49. It is also known industry wide as the CDIA's "Credit Reporting Resource Guide."

50. Metro 2 is driven by numeric codes that translate into specific alpha representations about consumers' creditworthiness and character that will ultimately appear on credit reports issued to third parties who make credit, insurance, rental, and employment decisions regarding consumers.

51. Metro 2 codes are used on an industry wide form known within the credit industry as an Automated Consumer Dispute Verification ("ACDV") electronic form.

52. The ACDVs have many fields in their body for use in effecting thorough and complete communications between data furnishers and the credit reporting agencies.

53. These ACDV "fields" have various titles for the many substantive areas into which the Metro 2 codes can be entered.

54. Upon receiving a dispute from a consumer, the credit bureaus have an automated system that prepares ACDVs that are sent to each of the data furnishers that are reporting the credit accounts disputed by a consumer.

55. The data furnishers, like Defendant BMW, then have an obligation under the FCRA to conduct a reasonable reinvestigation with respect to the disputed credit account and review all relevant information provided by the consumer with the dispute to determine whether the disputed credit account information is accurate and/or belongs to the disputing consumer. See 15 U.S.C. § 1681s-2(b).

56. Once the data furnisher completes its reinvestigation, it will code the ACDV accordingly, representing either that the disputed account was verified as accurate and belonging to the disputing consumer, updating information related to the account, or deleting the account entirely, and return the ACDV to the respective credit bureau(s) via e-OSCAR.

### Plaintiff Transfers his BMW Lease

57. Plaintiff previously leased a 2021 BMW 750i xDrive sedan and financed the lease through BMW Finance.

58. In March 2023, Plaintiff transferred the lease to a third party.

59. By letter dated March 27, 2023, Defendant BWM confirmed that the lease transfer was finalized and that Plaintiff would "only be responsible for the payments, charges, fees, and/or incurred taxes prior to 03/27/2023."

60. Beginning on March 27, 2023, Plaintiff was no longer responsible for the lease with BWM.

### Experian Reports BWM Account in Plaintiff's Credit File

61. In or around June 2024, the Plaintiff reviewed his credit reports.

10

62. Plaintiff reviewed the pertinent details in his credit report and learned that the transferred lease with Defendant BMW was still being reported in his credit file.

63. Furthermore, Defendant Experian was reporting the lease with an outstanding balance of $11,727.00.

64. Plaintiff was confused and distressed by this information because his lease with Defendant BMW had already been transferred to a third party.

65. Plaintiff was no longer responsible for the lease with Defendant BMW, and the lease account should no longer have been reported.

### Plaintiff Disputes the Inaccurate Credit Reporting (June 2024)

66. In or around June 2024, extremely shocked, surprised, and embarrassed at Defendant Experian's inaccurate reporting, Plaintiff disputed the inaccurate information that Plaintiff inaccurate account balance on the BMW tradeline by submitting written disputes to Experian. In the dispute letter, Plaintiff explained that the lease had been transferred and that the reported balance was inaccurate.

67. Plaintiff requested that Defendant Experian reinvestigate the disputed information, correct the reporting, and send him a corrected copy of his credit report.

### Experian's Failed to Conduct a Reasonable Investigation (June 2024)

68. Experian notified BMW about Plaintiff's dispute by transmitting an ACDV to BMW over the eOscar system.

69. By letter dated June 21, 2024, Experian responded that it had completed its investigation and verified that the reporting was accurate.

70. Experian failed to adequately review all of the information provided to it by Plaintiff in support of Plaintiff's dispute.

11

71. Upon information and belief, Defendant Experian failed to conduct a reasonable reinvestigation of Plaintiff's June 2024 dispute.

72. Thereafter, Defendant Experian failed to correct or delete the lease account with Defendant BMW reported in Plaintiff's credit file and reports.

73. Experian failed to conduct a reasonable reinvestigation of Plaintiff's dispute tendered on June 2024, or any reinvestigation whatsoever, to determine whether the disputed information is inaccurate and record the current status of the disputed information, in violation of 15 U.S.C. § 1681i(a)(1)(A).

### Defendant BMW's Unreasonable Dispute Reinvestigation

74. Upon information and belief, on or about June 2024, Defendant BMW received Defendant Experian's ACDV and failed to conduct a reasonable investigation with respect to the information disputed by Plaintiff.

75. Upon information and belief, Defendant BMW failed to review all relevant information provided by Defendant Experian regarding Plaintiff's dispute tendered in or around June 2024.

76. Upon information and belief, Defendant BMW verified the disputed information as accurate to Defendant Experian in or around June 2024.

77. Defendant BMW violated 15 U.S.C. § 1681s-2b by failing to conduct a reasonable investigation with respect to the disputed information, failing to review all relevant information available to it, and failing to modify, delete, or permanently block the disputed information that was inaccurate, incomplete or unverifiable.

**Plaintiff Submits a Second Dispute to Experian (July 2024)**

78. As of July2024 Defendant Experian was still reporting the lease account with Defendant BMW in his credit file.

79. On or about July 11, 2024, extremely shocked, surprised, and embarrassed at that the BMW tradeline was still being reported inaccurately, Plaintiff submitted a second dispute to Experian. Once again, Plaintiff explained that he was not responsible for the lease, that it was inaccurate and misleading to report that there was an outstanding balance on the BMW account.

80. In addition, Plaintiff attached the letter from Defendant BMW confirming the transfer of the lease and that Plaintiff was no longer responsible for the said lease.

81. Plaintiff requested that Experian reinvestigate the disputed information, correct the reporting, and for Defendant Experian to send him a corrected copy of his credit report.

**Defendant Experian's Unreasonable Reinvestigation July 2024**

82. Plaintiff's second dispute was delivered to Experian on July 22, 2024.

83. Experian promptly notified BMW about the dispute by transmitting an ACDV through the eOscar platform.

84. On or about July 27, 2024, Plaintiff reviewed his credit file from Defendant Experian and discovered that they were still reporting the lease account with Defendant BMW with no outstanding balance.

85. Upon information and belief, Defendant Experian sent Defendant BMW an automated credit dispute verification ("ACDV") pursuant to Plaintiff's July 2024 dispute to Defendant Experian.

86. Upon information and belief, Defendant Experian failed to adequately review all of the information provided to it by Plaintiff in support of Plaintiff's dispute.

13

87. Upon information and belief, Defendant Experian failed to conduct a reasonable reinvestigation of Plaintiff's July 2024 dispute.

88. Thereafter, Defendant Experian failed to correct or delete the 'lease account with Defendant BMW appearing in Plaintiff's credit file.

89. Defendant Experian failed to conduct a reasonable reinvestigation of Plaintiff's dispute tendered on or about July 2024, or any reinvestigation whatsoever, to determine whether the disputed information is inaccurate and record the current status of the disputed information, in violation of 15 U.S.C. § 1681i(a)(1)(A).

### Defendant BMW's Unreasonable Dispute Reinvestigation July 2024

90. Upon information and belief, on or about July 11, 2024, Defendant BMW received Defendant Experian's ACDV and failed to conduct a reasonable investigation with respect to the information disputed by Plaintiff.

91. Upon information and belief, Defendant BMW failed to review all relevant information provided by Defendant Experian regarding Plaintiff's dispute tendered on or about July 11, 2024.

92. Upon information and belief, on or about July 11, 2024, Defendant BMW verified the disputed information as accurate to Defendant Experian.

93. Defendant BMW violated 15 U.S.C. § 1681s-2b by failing to conduct a reasonable investigation with respect to the disputed information, failing to review all relevant information available to it, and failing to modify, delete, or permanently block the disputed information that was inaccurate, incomplete or unverifiable.

94. Plaintiff reasonably believes that Defendant BMW continued to furnish data to Defendant Experian inaccurately, suggesting that Plaintiff was still responsible for the lease, which was transferred on March 27, 2023.

95. Plaintiff reasonably believes that Defendant Experian continued to publish that Plaintiff was still responsible for the lease account with Defendant BMW.

96. As a result of the inaccurate reporting of the balance amount, and despite Plaintiff's lease being transferred, the Defendants made it practically impossible for Plaintiff to continue to obtain credit.

97. Plaintiff has been planning to apply for a mortgage but has been unreasonably deterred due to Defendants' actions.

98. At all times pertinent hereto, Defendants were acting by and through their agents, servants, and/or employees who were acting within the course and scope of their agency or employment, and under the direct supervision and control of the Defendants herein.

99. At all times pertinent hereto, the conduct of Defendants, as well as that of their respective agents, servants, and/or employees, was intentional, willful, reckless, grossly negligent and in utter disregard for federal law and the rights of Plaintiff herein.

100. As a standard practice, Defendant Experian does not conduct independent investigations in response to consumer disputes. Instead, they merely parrot the response of the credit furnisher despite numerous court decisions admonishing this practice.

101. Defendant Experian is aware of the shortcomings of its procedures and intentionally chooses not to comply with the FCRA to lower its costs. Accordingly, Defendant Experian's violations of the FCRA are willful.

102. As a result of Defendants' conduct, action, and inaction, Plaintiff suffered damage by loss of credit; loss of ability to purchase and benefit from his good credit rating; detriment to his credit rating; the expenditure of time and money disputing and trying to correct the inaccurate credit reporting; the expenditure of labor and effort disputing and trying to correct the inaccurate credit reporting; and emotional distress including the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials.

**CLAIMS FOR RELIEF**
**COUNT I**
**15 U.S.C. § 1681e(b)**
**Failure to Follow Reasonable Procedures to Assure Maximum Possible Accuracy**
**(Against Experian)**

103. Plaintiff re-alleges and incorporates by reference the allegations set forth in preceding paragraphs as if fully stated herein.

104. The FCRA imposes a duty on consumer reporting agencies to devise and implement procedures to ensure the "maximum possible accuracy" of consumer reports, as follows:

> Whenever a consumer reporting agency prepares a consumer report, it shall follow reasonable procedures to assure *maximum possible accuracy* of the information concerning the individual about whom the report relates.

15 U.S.C. §1681e(b) (emphasis added).

105. Defendant Experian prepared patently false consumer reports concerning Plaintiff.

106. Defendant Experian readily sold such false reports to one or more third parties, thereby misrepresenting Plaintiff, and ultimately Plaintiff's creditworthiness.

107. Defendant Experian violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files it published and maintained concerning Plaintiff.

108. As a result of Defendant Experian's conduct, action, and inaction, Plaintiff suffered damage by loss of credit; loss of ability to purchase and benefit from his good credit rating;

detriment to his credit rating; the expenditure of time and money disputing and trying to correct the inaccurate credit reporting; the expenditure of labor and effort disputing and trying to correct the inaccurate credit reporting; and emotional distress including the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials.

109. Defendant Experian's conduct, actions, and inactions were willful, rendering it liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. Alternatively, they were negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

110. Plaintiff is entitled to recover attorneys' fees and costs from Defendant Experian in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

## COUNT II
## 15 U.S.C. § 1681i
### Failure to Perform a Reasonable Reinvestigation
### (Against Experian)

111. Plaintiff re-alleges and incorporates by reference the allegations set forth in preceding paragraphs as if fully stated herein.

112. The FCRA mandates that a CRA conducts an investigation of the accuracy of information "[I]f the completeness or accuracy of any item of information contained in a consumer's file" is disputed by the consumer. *See* 15 U.S.C. § 1681i(a)(1). The Act imposed a 30-day time limit for the completion of such an investigation. *Id*.

113. The FCRA provides that if a CRA conducts an investigation of disputed information and confirms that the information is in fact inaccurate or is unable to verify the accuracy of the disputed information, the CRA is required to delete that item of information from the consumer's file. *See* 15 U.S.C. § 1681i(a)(5)(A).

114. On at least one occasion, Plaintiff disputed the inaccurate information with Experian and requested that they correct and/or delete a specific item in his credit file that is patently inaccurate, misleading, and highly damaging to him, namely, the already transferred lease account with Defendant BMW.

115. In response to Plaintiff's dispute, Experian failed to conduct a reinvestigation, or such investigation was so shoddy as to allow patently false, logically inconsistent, and damaging information to remain in Plaintiff's credit file.

116. Defendant Experian violated 15 U.S.C. § 1681i by failing to conduct a reasonable reinvestigation to determine whether the disputed information was inaccurate and record the current status of the disputed information, or delete the disputed information, before the end of the 30-day period beginning on the date on which they received the notices of dispute from Plaintiff; and by failing to maintain reasonable procedures with which to filter and verify disputed information in Plaintiff's credit file.

117. As a result of Defendant Experian's conduct, action, and inaction, Plaintiff suffered damage by loss of credit; loss of ability to purchase and benefit from his good credit rating; detriment to his credit rating; the expenditure of time and money disputing and trying to correct the inaccurate credit reporting; the expenditure of labor and effort disputing and trying to correct the inaccurate credit reporting; and emotional distress including the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials.

118. Defendant Experian's conduct, actions, and inactions were willful, rendering it liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. Alternatively, they were negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

119. Plaintiff is entitled to recover attorneys' fees and costs from Defendant Experian in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

## COUNT III
## 15 U.S.C. § 1681s-2(b)
## Failure to Conduct an Investigation of the Disputed Information and Review all Relevant Information Provided by the Consumer
## (Against BMW)

120. Plaintiff re-alleges and incorporates by reference the allegations set forth in preceding paragraphs as if fully stated herein.

121. Defendant BMW furnished the inaccurate information relating to Plaintiff to the national credit bureaus, including but not limited to Experian.

122. Defendant BMW violated 15 U.S.C. § 1681s-2(b) by failing to investigate Plaintiff's dispute, or otherwise by failing to fully and properly investigate Plaintiff's dispute(s), including but not limited to failing to review all relevant information regarding the same; by failing to permanently and lawfully correct its own internal records to prevent the re-reporting of the inaccurate information relating to Plaintiff to the national credit bureaus, including but not limited to Experian; and, by failing to cease furnishing inaccurate information relating to Plaintiff to the national credit bureaus, including but not limited to Experian.

123. As a result of Defendant BMW's conduct, action, and inaction, Plaintiff suffered damage by loss of credit; loss of ability to purchase and benefit from his good credit rating; detriment to his credit rating; the expenditure of time and money disputing and trying to correct the inaccurate credit reporting; the expenditure of labor and effort disputing and trying to correct the inaccurate credit reporting; and emotional distress including the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials.

124. Defendant BMW's conduct, action, and inaction were willful, rendering them liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court

pursuant to 15 U.S.C. § 1681n. Alternatively, they were negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

125. Plaintiff is entitled to recover attorneys' fees and costs from Defendant BMW in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff prays for the following relief:

i. Determining that Defendants negligently and/or willfully violated the FCRA;

ii. Awarding Plaintiff actual, statutory, and punitive damages as provided by the FCRA;

iii. Awarding Plaintiff reasonable attorneys' fees and costs as provided by the FCRA; and,

iv. Granting further relief, in law or equity, as this Court may deem appropriate and just.

## DEMAND FOR JURY TRIAL

Plaintiff is entitled to and hereby demands a trial by jury on all issues so triable.

Dated: New York,                                                **CONSUMER ATTORNEYS**
August 28, 2024

                                                                    */s/ Moshe Boroosan*
                                                                    Moshe Boroosan, Bar No. 5429915
                                                                    CONSUMER ATTORNEYS
                                                                    1318 Avenue J, 2nd Floor,
                                                                    Brooklyn, NY 11230
                                                                    T: (718) 887-2926
                                                                    F: (718) 715-1750
                                                                    Email: mboroosan@consumerattorneys.com

                                                                    *Attorneys for Plaintiff*
                                                                    *Moshe Borukh*